IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

HEIDI JO MILLER,

        Plaintiff,

    vs.                               Civil Action 2:14-cv-422
                                       Judge Marbley
                                       Magistrate Judge King

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

### REPORT AND RECOMMENDATION

**I.   Background**

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income. This matter is before the Court on *Plaintiff Heidi Jo Miller's Statement of Errors* ("*Statement of Errors*"), Doc. No. 11, and *Defendant's Memorandum in Opposition*, Doc. No. 16. Plaintiff has not filed a reply.

Plaintiff Heidi Jo Miller filed her applications for benefits on July 8, 2009, alleging that she has been disabled since May 7, 2009.[1] *PAGEID* 77, 334-42. The claims were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an

---

[1] At the first administrative hearing, plaintiff amended her alleged onset date to October 3, 2007. *PAGEID* 143-45. However, the administrative law judge concluded, in his January 17, 2013 decision after the second administrative hearing, that plaintiff was not disabled from May 7, 2009 through the date of that decision. *PAGEID* 77-93. Plaintiff has not challenged the administrative decision in that regard.

administrative law judge.

An administrative hearing was held on May 19, 2011, at which plaintiff, represented by counsel, appeared and testified, as did Michael Klein, who testified as a vocational expert. *PAGEID* 138. In a decision dated June 17, 2011, the administrative law judge concluded that plaintiff was not disabled. *PAGEID* 204-17. However, on September 25, 2012, the Appeals Council vacated that decision and remanded the matter to the administrative law judge for further consideration. *PAGEID* 224-25.

A second administrative hearing was held on January 11, 2013, at which plaintiff, represented by counsel, appeared and testified, as did Mary Harris, who testified as a vocational expert. *PAGEID* 101. In a decision dated January 17, 2013, the administrative law judge concluded that plaintiff was not disabled from May 7, 2009, through the date of the administrative decision. *PAGEID* 77-93. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on March 27, 2014. *PAGEID* 55-58.

Plaintiff was 42 years of age on the date of the administrative law judge's January 17, 2013 decision. *See PAGEID* 93, 334. She has a limited education, is able to communicate in English, and has past relevant work as a cashier. *PAGEID* 173. Plaintiff was last insured for disability insurance purposes on June 30, 2010. *PAGEID* 80. She has not engaged in substantial gainful activity since May 7, 2009. *Id*.

## II.   Evidence of Record[2]

Plaintiff began treatment with Katherine Balturshot, M.D., on July 10, 2006. *PAGEID* 527. At the time, plaintiff was 5' 5-1/4" tall and weighed 204.9 pounds. *PAGEID* 570. Plaintiff reported pain in her lower abdomen, back, neck, and shoulders that extended into her lower back and legs. *Id*. Plaintiff saw Dr. Balturshot approximately once per month through at least January 2008. *PAGEID* 532-71, 587-604, 622-39, 835-57. Plaintiff regularly reported pain in her back and legs during this time and Dr. Balturshot provided pain medication management. *Id*.

On October 23, 2006, Dr. Balturshot noted that plaintiff had no urinary or fecal incontinence, normal gait, and 5/5 strength in her bilateral lower extremities. *PAGEID* 558. On April 2, 2007, plaintiff had 5/5 strength in the bilateral lower extremities, there was pain in the hip flexors on extension, and 4+/5 strength in the bilateral feet on dorsiflexion. *PAGEID* 546. On April 25, 2007, Dr. Balturshot noted an antalgic gait. *PAGEID* 544. On May 21, 2007, plaintiff's bilateral upper extremity grip strength was 4+/5 and her biceps and triceps were 5/5. *PAGEID* 542. On July 23, 2007, plaintiff reported that she had fallen down the steps three times and that she had not participated in physical therapy since her falls. *PAGEID* 536. Dr. Balturshot noted an antalgic gait and 5/5 strength in the bilateral upper and lower extremities and complaints of pain with hip extension and dorsiflexion of the feet. *PAGEID* 536. On August 27, 2007, plaintiff reported that

---

[2]  The Court's discussion of the evidence of record is limited to the issues presented in plaintiff's *Statement of Errors*.

her medication was adequate, that another doctor intended to administer lumbar blocks, and that she was "[a]ble to do what she needs to do." *PAGEID* 534. Dr. Balturshot again noted 5/5 strength in the bilateral upper and lower extremities, but 4/5 on dorsiflexion of the bilateral feet. *Id*. On September 26, 2007, plaintiff reported pain in her back, ankles, legs, shoulders, and hands. *PAGEID* 596. A TENS unit had helped with pain and plaintiff was attending physical therapy. *Id*. Dr. Balturshot questioned whether plaintiff may have fibromyalgia. *Id*.

Dr. Balturshot ordered several tests in connection with plaintiff's back and leg pain. A July 21, 2006 CT of the lumbar spine revealed a congenitally narrow spinal canal and spondylostenosis. *PAGEID* 569. Plaintiff's right hip was unremarkable, with minimal left acetabular roof osteophyte formation and subchondral cysts; degenerative changes were seen in the lower lumbar spine and SI joints. *PAGEID* 562. A November 20, 2006 MRI of the lumbar spine revealed multilevel mild to moderate spinal stenosis, mild disk bulges at L3-4 and L4-5, developmental canal narrowing, mild facet and ligament hypertrophy, and a focal signal abnormality in the S1 vertebral body. *PAGEID* 557. In May 2007, straightening of the normal cervical canal was seen, along with multilevel degenerative disc disease and vertebral arthrosis, and narrowing of the interior cervical canal. *PAGEID* 541. A July 5, 2007 MRI of the cervical spine revealed degenerative changes and multilevel spinal stenosis, moderate at the C5-6 level and severe at the C6-7 level. *PAGEID* 538-39.

4

Dr. Balturshot completed a physical capacities evaluation on October 3, 2007, in which he opined that plaintiff could sit or walk up to 20 minutes without moving. *PAGEID* 529. Plaintiff could never lift up to 10 pounds but could occasionally carry up to 10 pounds. *Id*. Plaintiff could not use her hands for pushing or pulling nor could she bend, squat, crawl, or climb. *Id*. She could occasionally reach above shoulder level. *Id*. Plaintiff should not engage in activities involving unprotected heights, exposure to marked changes in temperature and humidity, or driving automotive equipment. *Id*. She would have mild restrictions on activities involving being around moving machinery and exposure to dust, fumes, and gases. *Id*.

Plaintiff was diagnosed with fibromyalgia on December 28, 2007 by April Marquardt, M.D., upon referral from Dr. Balturshot. *PAGEID* 581-82. Dr. Marquardt found that plaintiff was positive for weight gain, cold sensitivity, vision changes, intermittent mouth sores, numbness and tingling, and weakness. *PAGEID* 581. On January 18 and March 28, 2008, plaintiff tested positive in 11 of 18 tender points. *PAGEID* 579, 583. Straight leg raising was positive on the left. *PAGEID* 579. Plaintiff reported that aquatic therapy helped, but she complained of numbness and tingling in her left leg and right arm. *Id*.

Plaintiff began treating with Rupal S. Oza, M.D., on August 22, 2008. *PAGEID* 619. Plaintiff reported no side effects from her medications; she rode her bike 10 to 15 minutes three to four times per week. *Id*. Her gait was stable. *Id*. Dr. Oza diagnosed "neck pain – stable" and "neuropathy – stable, continue exercise and

increase as tolerated." *PAGEID* 619-20.  On September 11, 2008, plaintiff reported that she was still exercising, but that her pain had been "on and off getting worse" over the prior few months.  *PAGEID* 617.  Dr. Oza diagnosed thoracic or lumbosacral neuritis or radiculitis, unspecified.  *Id*.  On October 9, 2008, plaintiff reported that she was "doing well" and that her pain medication was helping and allowed her to stay physically active.  *PAGEID* 613-14.  Plaintiff reported exercising daily; she had a normal gait.  *PAGEID* 614.

On November 7, 2008, plaintiff again had a normal gait. Findings included a normal left knee exam, moderate diffuse tenderness in the spine with no spinous tenderness, and 5/5 motor strength in the bilateral lower extremities with mild decreased sensation over the left thigh.  *PAGEID* 610-11.  On December 5, 2008, plaintiff reported that she was doing well, was exercising daily, was able to complete activities of daily living with little difficulty; her overall pain was stable with medication.  *PAGEID* 608.

A September 29, 2008 MRI of the cervical spine revealed no significant changes since July 5, 2007.  *PAGEID* 573.

Plaintiff treated with Tarun R. Mansukhani, M.D., on March 5 and April 3, 2009.  Dr. Mansukhani noted point tenderness at L4; he was unable to assess plaintiff's range of motion because she was unable to climb onto the examining table.  *PAGEID* 649-51.

On April 30, 2009, plaintiff reported to Dr. Oza difficulty sleeping and completing some activities of daily living; she continued to walk her dog every day but she was otherwise not exercising much.

6

*PAGEID* 647-48.  Plaintiff reported increased pain in June 2009;
straight leg raise was positive at 40 degrees and her lower extremity
motor strength was 5/5.  *PAGEID* 646.  On July 6, 2009, plaintiff
reported improvement in her back pain.  *PAGEID* 644-45.  Dr. Oza noted
that plaintiff was "[a]dequately controlled with current med regimen"
and that she was "[a]ble to complete her ADLs."  *PAGEID* 644.

On June 30, 2009, Dr. Oza diagnosed degenerative disc disease in
the cervical and lumbar spine and commented that plaintiff had always
been compliant with her treatment.  *PAGEID* 932.  Dr. Oza opined that
plaintiff

> is unable to sit or stand for greater than 15 minutes.  She
> is unable to lift, carry, push or pull any amount of
> weight.  She is able to walk approximately 200 feet before
> stopping but she does have significant pain with this.  She
> has very limited bending and is unable to stoop or squat.
> I do not see her as being able to work at this time.

*Id.*

Plaintiff continued to treat regularly with Dr. Oza through at
least February 2013.  *See PAGEID* 467, 645-48, 679, 686-87, 727, 740-
54, 916-27, 958, 973, 1008, 1029-30, 1071, 1070, 1092-93,.

Plaintiff received steroid injections in the left lateral femoral
cutaneous nerve on March 31, 2010.  *PAGEID* 956.  She also received
steroid injections on April 13, 2010.  *PAGEID* 975-76.

Plaintiff underwent complete decompressive laminectomies and
bilateral foraminotomies with fusion/fixation at L4-L5 on August 4,
2010.  *PAGEID* 937-54.  She was diagnosed post-operatively with left
lateral femoral cutaneous neuralgia.  On November 29, 2010, plaintiff
was doing "very well with excellent resolution of her pre-operative

radicular symptoms." *PAGEID* 891-92.  Persistent cramping in the low back and legs had markedly improved.  *PAGEID* 892.  On June 4, 2012, plaintiff complained of axial low back pain symptoms for the prior couple of months.  *PAGEID* 1055.  Upon exam, she weighed 232 pounds and had reduced lumbar range of motion on both flexion and extension, which triggered low back pain.  *PAGEID* 1056.  Straight leg raising was negative bilaterally.  *Id.*

On July 21, 2011, Dr. Oza diagnosed L4-5 lumbar stenosis with neurogenic claudication, and indicated that plaintiff's pain and paresthesias required pain medication.  *PAGEID* 931.  Dr. Oza opined that plaintiff "would be unable to hold a full time work position." *Id.*

Plaintiff treated with Michael F. Evers, D.O., on November 10, 2011 for low back pain and pain in her legs since October 2010. *PAGIED* 997.  Upon examination, plaintiff had a slow, deliberate gait that was not antalgic.  *PAGEID* 997.  Straight leg raising was positive on the right in both the seated and supine positions.  *PAGEID* 997-98. Plaintiff was able to partially squat, stand erect and flex and extend at the waist, but she had pain with each motion.  *Id.*  Dr. Evers diagnosed chronic low back pain and fibromyalgia, referred plaintiff to physical therapy, and provided a trial TENS unit.  *Id.*

A June 12, 2012 MRI of the lumbar spine revealed degenerative disc disease of the lumbar spine superimposed on congenital spinal stenosis and minimal asymmetric thickening of some of the left lumbosacral nerve roots at L5.  *PAGEID* 1048-49.

8

In February 2013, Dr. Oza completed a physical capacities evaluation. *PAGEID* 467. Dr. Oza diagnosed degenerative disk disease of the lumbar spine, cervical spinal stenosis, lumbosacral neuritis, failed back surgery syndrome, and fibromyalgia. *Id*. Dr. Oza opined that plaintiff is unable to work an eight-hour workday and would remain so for a period of 12 months or more. *Id*. Plaintiff could stand/walk for 60 minutes in an eight-hour workday, for 20 minutes without interruption. *Id*. Plaintiff could sit for 60 minutes in an eight-hour workday, for 10 minutes without interruption. *Id*. Dr. Oza further opined that plaintiff could rarely handle and could lift/carry up to five pounds occasionally. *Id*.

Dimitri Teague, M.D., reviewed the record and completed a physical residual functional capacity assessment on October 2, 2009. *PAGEID* 709-16. According to Dr. Teague, plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently. "Because of [plaintiff's] obesity and chronic cervical lumbar back pain with DDD, [she] would be able to walk/stand for 2 hours out of an 8 hour work day." *PAGEID* 711. Dr. Teague also opined that plaintiff could sit for about six hours in an eight-hour workday. *Id*. Due to problems with her lower extremities, as evidenced by positive straight leg raising, and obesity, plaintiff could never climb ladders, ropes, or scaffolds; she could occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl and she could frequently balance. *PAGEID* 712. Plaintiff should avoid all exposure to hazards such as machinery and heights and concentrated exposure to vibration. *PAGEID* 713.

9

Walter Holbrook, M.D., reviewed the record and made a physical residual functional capacity assessment on October 2, 2009, with findings similar to those of Dr. Teague. *PAGEID* 718-25. However, Dr. Holbrook did not include a restriction on exposure to hazards, nor did he provide a narrative explanation of his findings. *Id*.

## III. Administrative Decision

The administrative law judge found that plaintiff's severe impairments consist of "disorders of the back, fibromyalgia, obesity, affective disorder, anxiety disorder, and borderline intellectual functioning." *PAGEID* 80. The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the residual functional capacity ("RFC") to

> perform sedentary work, as defined in 20 CFR 404.1567(a) and 416.967(a), except that she can never climb ladders, ropes or scaffolds, and can only occasionally climb ramps or stairs. In addition, the claimant can only occasionally stoop, kneel, crouch, crawl, or balance. The claimant also requires the ability to change from a sitting position to a standing position (and vice versa) at least every hour. Furthermore, the claimant is limited to occasional pushing or pulling activity. Moreover, the claimant should avoid concentrated exposure to extreme vibration, and all exposure to the use of hazardous machinery, operational control of moving machinery, and unprotected heights. Finally, the claimant is limited to the performance of simple, routine, and repetitive tasks, in a work environment where changes occur on no more than an occasional basis.

*PAGEID* 80-82. Although this RFC precludes the performance of plaintiff's past relevant work, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff is nevertheless able to perform a significant number of jobs in the

10

national economy, including such representative jobs as office helper,
cashier 2, electronic assembly, final assembly, and hand packager.
*PAGEID* 91-92.  Accordingly, the administrative law judge concluded
that plaintiff was not disabled within the meaning of the Social
Security Act from May 7, 2009, through the date of the administrative
decision.  *PAGEID* 93.

## IV.  Discussion

Pursuant to 42 U.S.C. § 405(g), judicial review of the
Commissioner's decision is limited to determining whether the findings
of the administrative law judge are supported by substantial evidence
and employed the proper legal standards.  *Richardson v. Perales*, 402
U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595
(6th Cir. 2005).  Substantial evidence is more than a scintilla of
evidence but less than a preponderance; it is such relevant evidence
as a reasonable mind might accept as adequate to support a conclusion.
*See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y
of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  This
Court does not try the case *de novo*, nor does it resolve conflicts in
the evidence or questions of credibility.  *See Brainard v. Sec'y of
Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v.
Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this
Court must examine the administrative record as a whole.  *Kirk*, 667
F.2d at 536.  If the Commissioner's decision is supported by
substantial evidence, it must be affirmed even if this Court would

11

decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

In her *Statement of Errors*, plaintiff argues, first, that the administrative law judge violated the treating physician rule in evaluating the opinions of Dr. Balturshot and Dr. Oza. *Statement of Errors*, pp. 5-9.  Plaintiff argues that Dr. Balturshot's 2007 opinion and Dr. Oza's June 2009, July 2011, and February 2013 opinions should have been "given significant, if not controlling weight." *Id.* Plaintiff further argues that the administrative law judge erred by "making conclusory statements about the format of the [opinions] or what info should have been included in the medical record." *Id*. at p. 7 (emphasis omitted).  According to plaintiff, the administrative law judge improperly discounted Dr. Balturshot's opinion for "not contain[ing] more than a multitude of checkboxes" and because she "did not state the basis for her disability opinion[s]." *Id*.

The opinion of a treating provider must be given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). Even if the opinion of a treating provider is not entitled to controlling weight, an administrative law judge is nevertheless required to evaluate the opinion by considering such factors as the length, nature and extent of the treatment relationship, the frequency of examination, the

medical specialty of the treating physician, the extent to which the opinion is supported by the evidence, and the consistency of the opinion with the record as a whole.  20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Moreover, an administrative law judge must provide "good reasons" for discounting the opinion of a treating provider, *i.e.*, reasons that are "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).  This special treatment afforded the opinions of treating providers recognizes that

> "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Wilson,* 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)).

As discussed *supra*, plaintiff treated regularly with Dr. Balturshot from July 2006 through 2008 and with Dr. Oza from August 2008 through 2013.  Dr. Balturshot completed a physical capacities evaluation on October 3, 2007, in which he opined that plaintiff could not sit or walk more than 15 to 20 minutes without moving, could never lift up to 10 pounds and could occasionally carry up to 10 pounds. *PAGEID* 529. Plaintiff could not use her hands for pushing and pulling

and would be unable to bend, squat, crawl, or climb. *Id.* Plaintiff could occasionally reach above shoulder level. *Id.* Dr. Baltershot further opined that plaintiff would be restricted from activities involving unprotected heights, exposure to marked changes in temperature and humidity, and driving automobile equipment. *Id.* Plaintiff would have mild restrictions in working around moving machinery and exposure to dust, fumes, and gases. *Id.*

On June 30, 2009, Dr. Oza diagnosed degenerative disc disease in plaintiff's cervical and lumbar spine, had been evaluated by Neurosurgery, Rheumatology, and a pain specialist and had always been compliant with her treatment. *PAGEID* 932. Dr. Oza opined that plaintiff

> is unable to sit or stand for greater than 15 minutes. She is unable to lift, carry, push or pull any amount of weight. She is able to walk approximately 200 feet before stopping but she does have significant pain with this. She has very limited bending and is unable to stoop or squat. I do not see her as being able to work at this time.

*Id.*

On July 21, 2011, Dr. Oza indicated that plaintiff had undergone surgery at L4-5 in August 2010, suffered from L4-5 lumbar stenosis with neurogenic claudication, and required pain medication to alleviate symptoms of pain and paresthesias. *PAGEID* 931. Dr. Oza opined that plaintiff "would be unable to hold a full time work position." *Id.*

The administrative law judge evaluated these opinions as follows:

> The undersigned next considered the medical opinion evidence relating to the claimant's physical health. Katherine Baltershot, M.D., completed a Physical Capacities

Evaluation on October 3, 2007. She indicated that the claimant was severely disabled and unable to do even sedentary work. Dr. Baltershot also indicated that the claimant could not push or pull with either hand, could perform few postural movements, and needed to avoid all exposure to unprotected heights, marked changes in temperature and humidity, and the operation of an automobile (B4F).

. . .

In June of 2009, Rupal Oza, M.D., wrote a letter stating that the claimant could not sit or stand for more than fifteen minutes, could not lift, carry, push, or pull any amount of weight, could only walk for 200 feet before stopping, and was unable to stoop or squat, and, therefore, could not work (B26F/2). In July of 2011, he wrote a letter stating that the claimant would be unable to hold a full-time work position due to her use of chronic pain medications and her prior back surgery in August of 2010 (B26F/1).

The undersigned carefully evaluated the medical evidence and determind that Dr. Balturshot's opinion was not credible. Specifically, her opinion was not consistent with her own treatment records, which represent the bulk of the claimant's treatment records in 2006 and 2007. Indeed, a review of these records indicated that while Dr. Balturshot felt that the claimant might have had some functional limitations, she did not indicate that the claimant had the types of limitations outlined in her medical opinion statement. Indeed, Dr. Balturshot did not tell the claimant to avoid certain types of activities or that she had significant medically imposed limitations. Further, other treatment evidence showed that while the claimant had some ongoing impairments and limitations, there was no evidence that her providers stated that she had such extreme and profound functional limitations. In addition, the claimant repeatedly reported that she could perform a full range of activities of daily living without significant assistance, as well as such activities as walking her dog and caring for her young grandson during the daytime hours. Finally, Dr. Balturshot's opinion did not contain more than a multitude of checkboxes. Her opinion statement did not indicate in any sense how she reached her conclusion regarding each determination or what evidence she relied on. Overall, these factors led the undersigned to determine that Dr. Balturshot's opinion was not credible. These same factors led the undersigned to give Dr. Oza's opinion of June of 2009, little weight.

15

. . .

> The undersigned also considered Dr. Oza's opinion from 2011
> but did not find it credible because he merely stated what
> treatment the claimant was receiving and concluded that she
> could not work.  Much like Dr. Balturshot's opinion from
> 2007, he did not provide any specific functional findings
> or explanation for why he felt that she could not work.
> The undersigned determined that this did not necessarily
> represent a medical opinion and instead merely indicated
> that the claimant could not work.  However, even if treated
> as a medical opinion, the claimant's treatment record and
> her reported abilities, as discussed above and below,
> indicated that his opinion was not credible, and,
> therefore, entitled to little weight.

*PAGEID* 87-88.

The administrative law judge did not violate the treating
physician rule in evaluating Dr. Balturshot's opinion or Dr. Oza's
June 2009 opinion.  The administrative law judge's analysis is
sufficiently specific as to the weight given to the opinions and the
reasons for assigning that weight.  The administrative law judge
discounted the opinions because they were inconsistent with the
doctors' own treatment records and other substantial evidence in the
record.  *PAGEID* 87.  The administrative law judge also noted that
plaintiff repeatedly reported that she could perform a full range of
activities of daily living without significant assistance, as well as
such activities as walking her dog and caring for her young grandson
during the daytime hours.  *Id*.  Moreover, the administrative law judge
found that Dr. Balturshot failed to identify objective medical
findings to support her opinion regarding plaintiff's impairments.
*Id*.  These findings enjoy substantial support in the record.

16

As noted by the administrative law judge, the treatment notes of neither doctor suggest that plaintiff has the type of limitations opined by either doctor, and neither doctor advised plaintiff to avoid certain types of activities or or told her that she had significant medically imposed limitations.  Plaintiff frequently complained of pain to Drs. Balturshot and Oza and both doctors provided medication management of those complaints.  However, plaintiff also reported that she could perform a full range of activities of daily living without significant assistance, *see PAGEID* 752 (September 2009); 742 (December 2009); 740 (January 2010); 686-87 (February 2010); 958 (March 2010); 919-20 (May 2011: "Chronic pain in her lower back is stable;" "Able to complete most ADLs, taking care of her 7 mo grandson today – who is here with her to the visit today."  "Gait normal."); 1029-30 (March 2012: "Chronic back stable, still with significant pain though." "Able to function and complete ADLs, during the day watches her 2yo grandson."); 1041 (June 2012: pain control adequate on most days; able to complete all ADLs with little assistance); 1070 (July 2012: "Able to complete most ADLs, baby sits her grandson."); 1093 (October 2012: "Able to complete most ADLs independently."); *but see PAGEID* 727 (May 2010: "Reports pain is stable, continues to use a cane to ambulate and struggles with ADLs, has to sit every few hours for prolonged periods of time."); 1008 (November 2011: helps her daughter take care of grandson, able to complete some ADLs, works very slowly, pain medication is not adequate), as well as walking her dog and caring for her grandson.  *PAGEID* 647-48 (April 2009: "She does walk her dog

17

everyday."); 923-24 (February 2011: "Takes care of her grandson while her daughter works full time.").  Moreover, it is not improper for the administrative law judge to consider whether a physician has identified objective medical findings to support a medical opinion. *See Price v. Comm'r Soc. Sec. Admin.*, 342 F. App'x 172, 176 (6th Cir. 2009) ("Because Dr. Ashbaugh failed to identify objective medical findings to support his opinion regarding Price's impairments, the ALJ did not err in discounting his opinion.").

The administrative law judge also did not err in evaluating Dr. Oza's 2011 opinion.  The administrative law judge found that Dr. Oza's 2011 opinion did not constitute a "medical opinion" because he "merely stated what treatments the claimant was receiving and concluded that she could not work." *PAGEID* 88.  The administrative law judge also found that, even if Dr. Oza's 2011 opinion was considered a "medical opinion," it was not credible for the same reasons that he discredited Dr. Balturshot's opinion and Dr. Oza's 2009 opinion. *Id*.  These findings enjoy substantial support in the record.

Dr. Oza indicated that he "do[es] do not see [plaintiff] as being able to work at this time." *PAGEID* 932.  However, an opinion that a claimant is unable to work "is tantamount to a disability opinion, a matter reserved to the Commissioner for determination." *See Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011). *See also Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 112 (6th Cir. 2010) ("The applicable regulations provide that a statement by a medical source that the claimant is 'unable to work' is not a 'medical

18

opinion[;] rather, it is an opinion on an 'issue[] reserved to the Commissioner because [it is an] administrative finding[] that [is] dispositive of a case, *i.e.*, that would direct the determination or decision of disability.'") (quoting 20 C.F.R. § 404.1527(e)(1)). Accordingly, Dr. Oza's opinion that plaintiff is unable to work is, "as a matter of law, 'not given[n] any special significance.'" *See Payne*, 402 F. App'x at 112.

Plaintiff also argues that the administrative law judge erred in failing to evaluate Dr. Oza's February 2013 physical capacities evaluation. *Statement of Errors*, pp. 8-9. The February 2013 opinion post-dates the administrative law judge's decision and was not available for the administrative law judge's consideration. Accordingly, the administrative law judge did not err in failing to evaluate Dr. Oza's February 2013 opinion.[3]

Plaintiff next argues that the administrative law judge "failed to mention the symptoms, effects and limitations that Plaintiff would experience because of her fibromyalgia." *Statement of Errors*, p. 9. Plaintiff specifically argues that "[t]here was no consideration of Plaintiff's fibromyalgia in determining the physical residual functional capacity as directed by SSR 12-2p at steps 4 and 5 of the ALJ's analysis." *Id.* at p. 11. Plaintiff's argument in this regard is not well taken.

---

[3] A district court may, under certain circumstances, remand a case under Sentence 6 of 42 U.S.C. § 405(g) for further administrative proceedings in light of new and material evidence. Plaintiff has not, however, sought a Sentence 6 remand.

The administrative law judge included fibromyalgia in plaintiff's severe impairments and found that plaintiff's fibromyalgia did not meet or medically equal any listed impairment. *PAGEID* 80-81. In determining plaintiff's RFC, the administrative law judge provided an extensive evaluation of the medical evidence and expressly considered the diagnosis of fibromyalgia and its symptoms. *See PAGEID* 83 ("After reviewing [the evidence previously discussed by the administrative law judge], doctors determined that [plaintiff] likely had fibromyalgia in addition to her back and spine impairments. They continued to prescribe medication designed to help deal with her fibromyalgia symptoms, and recommended she continue to see pain management professionals (B4F, B18F, and B19F)."); 83 ("Doctors diagnosed her several times with fibromyalgia and various back impairments, and continued to prescribe medication management, physical therapy, weight loss, and exercise. The claimant appeared to follow these recommendations, as she reported that she engaged with pool therapy, was compliant with medications, and was riding her bike several times per week. However, despite these reports, her doctors also felt that she would benefit from additional pain management evaluations and a surgical consultation (B5F, B17F/50-70, and B19F)."); 86 ("The providers performed a physical exam and noted that her gait was stable and that she could perform heel and toe standing, but did indicate she had reduced spinal range of motion. The claimant's providers did not make any mention of cane usage. They diagnosed her with chronic back pain and fibromyalgia, while noting her to be status-post lumbar

spinal stenosis.  They recommended participation in pain management, the avoidance of significant lifting and strenuous exercises (until after additional evaluation), participation in physical therapy, and that she should continue completing her activities of daily living (B31F/66-79).”); 86 (“[T]he claimant did exhibit some reduced range of motion in her back.  Providers again diagnosed the claimant with fibromyalgia, but also diagnosed failed back surgery syndrome.  They recommended that she continue doing her activities of daily living, avoid prolonged rest, engage in gentle aerobic conditioning and physical therapy, and take her medications (B31F/94-100).”). Plaintiff’s arguments to the contrary notwithstanding, *see Statement of Errors*, pp. 9-11, the administrative law judge also discussed the symptoms experienced by plaintiff as a consequence of her diagnosed fibromyalgia, including, *inter alia*, muscle pain, *PAGEID* 83-91, numbness and weakness in her lower extremities, *PAGEID* 83, depression, *PAGEID* 84, and anxiety, *PAGEID* 85.  *See* SSR 12-2P, 2012 WL 3104869, at *3 (July 25, 2012).  Moreover, although plaintiff argues that the administrative law judge erred in evaluating her fibromyalgia, *Statement of Errors*, pp. 9-11, plaintiff does not suggest what additional limitations she believes should be included in her RFC assessment as a result of that condition.  Accordingly, the Court finds no error in the administrative law judge’s evaluation of plaintiff’s fibromyalgia.

Plaintiff also argues that the administrative law judge “failed to consider the impact of the Plaintiff’s obesity on her

musculoskeletal impairments when determining the Plaintiff's residual functional capacity." *Id*. at p. 11.

Social Security Ruling 02-01p, 2000 WL 628049 (Sept. 12, 2002) ("the Ruling"), explains the Commissioner's policy and protocol in connection with the evaluation of obesity.  SSR 02-01p provides that, at step two of the five step evaluation, obesity may be considered a severe impairment alone or in combination with another medically determinable impairment.  *Id*.  It further provides that the Commissioner will perform "an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe."  *Id*.  The Ruling also directs that a claimant's obesity be considered not only at step two of the Commissioner's five step evaluation process, but also at the subsequent steps of the evaluation.  Moreover, an administrative law judge must consider the impact of a claimant's obesity on her RFC.  At step five of the sequential analysis, the burden shifts to the Commissioner to show that there are other jobs that exist in significant numbers in the economy that a claimant can perform consistent with her RFC, age, education, and work experience.  *See Wilson*, 378 F.3d at 548; 20 C.F.R. § 404.1520(a)(4)(v).  When a claimant is obese, the administrative law judge must consider this condition in that assessment.  SSR 02-01p; *Young v. Comm'r of Soc. Sec.*, 282 F. Supp. 2d 890, 897-898 (N.D. Ill. 2003).

In the case presently before the Court, the administrative law judge included obesity in plaintiff's severe impairments and

considered plaintiff's obesity in determining whether a Listing had been met or medically equalled.  The administrative law judge found that, "while the claimant's weight aggravated her impairments, there was no evidence that her obesity by itself or in combination with her other impairments caused the claimant to meet or equal any of the listed impairments." *PAGEID* 80.  In formulating plaintiff's RFC, the administrative law judge noted that obesity had been diagnosed, and he assigned weight to Dr. Tanley's opinion, which set forth specific limitations caused by plaintiff's obesity.  *PAGEID* 87, 89.  Plaintiff's RFC includes postural and environmental limitations that Dr. Tanley opined were present because of plaintiff's obesity.  *Compare PAGEID* 712-13, *with PAGEID* 89.  Plaintiff has also failed to identify any additional limitations that should be included in her RFC assessment as a result of her obesity.  Accordingly, the Court finds no error in the administrative law judge's evaluation of plaintiff's obesity.

    Having carefully considered the entire record in this action, the Court concludes that the decision of the Commissioner is supported by substantial evidence.  It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.


    If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part

thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

December 17, 2014                                          *s/Norah McCann King*
                                                          Norah M<sup>c</sup>Cann King
                                                          United States Magistrate Judge