IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **HEIDI JO MILLER** | : | **Case No. 2:14-CV-422** |
| **Plaintiff,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| v. | : | |
| | : | **Magistrate Judge King** |
| Carolyn W. Colvin, | : | |
| **COMMISSIONER OF** | : | |
| **SOCIAL SECURITY,** | : | |
| | : | |
| **Defendant.** | : | |

## **OPINION & ORDER**

This matter is before the Court on Plaintiff's Objection (Doc. 18) to the Magistrate Judge's December 17, 2014 **Report and Recommendation** (Doc. 17), recommending that the Court overrule Plaintiff's Statement of Errors (Doc. 11) and enter judgment in favor of the Commissioner of Social Security ("Commissioner" or "Defendant"). Upon independent review by the Court, and for the reasons set forth below, Plaintiff's Objections are hereby **OVERRULED** and the Court adopts the Magistrate Judge's **Report and Recommendation**.

### I.    FACTUAL BACKGROUND

Plaintiff filed for disability insurance benefits on July 8, 2009, alleging disability beginning May 7, 2009 due to disorders of the back, muscoskeletal issues, obesity, fibromyalgia, affective disorder, anxiety disorder, and borderline intellectual functioning.[1] (Tr. 277-285). After her applications were denied initially and upon reconsideration, an administrative hearing was held on May 19, 2011. The Administrative Law Judge ("ALJ") issued a decision on June 17, 2011, concluding that Plaintiff was not disabled within the meaning of the Social Security

---

[1] Although Plaintiff amended her alleged onset date to October 3, 2007 at the first administrative hearing, the ALJ's January 17, 2013 decision determined that Plaintiff was not disabled beginning on May 7, 2009. (*See* Doc. 17 at 1).

Act. (Doc. 11 at 2). The Appeals Council, however, granted Plaintiff's request for review on September 25, 2012. (Doc. 10-3). The Appeals Council vacated the ALJ's hearing decision and remanded the matter to an ALJ for further consideration. (*Id.*). Following the second administrative hearing, the ALJ issued a January 17, 2013 decision that Plaintiff was not disabled from May 7, 2009 through the administrative hearing date. (Doc. 10-2). The Appeals Council denied Plaintiff's request for review on March 27, 2014, and adopted the ALJ's January 17, 2013 decision as the final decision of the Commissioner of Social Security. (*Id.* at 1).

### A. Plaintiff's Medical Records

Plaintiff's history of muscoskeletal issues beginning in 1994 include diagnoses of osteoarthritis of the spine, degenerative spondylitic change in the lumbar spine, a history of disc protraction in the lumbar spine, facet arthrosis at the lumbosacral junction, disc protrusion of the cervical spine, and lesions of the cervical spine.[2] (*Id.* at 416-30; 432-66). From 1994 to 2005, Plaintiff was treated intermittently by doctors and had no signs of ongoing work-related functional limitations. (*See id.*).

Plaintiff began treatment with Dr. Balturshot in July 2006 for various health issues including back pain. (Tr. 467). Plaintiff saw Dr. Balturshot approximately once per month from July 2006 to at least January 2008. During this time, Dr. Balturshot provided Plaintiff with medicine to manage her pain. (*See id.* at 475-511). In determining the source of Plaintiff's pain, Dr. Balturshot ordered multiple tests, including MRIs and CT scans. (Doc. 11 at 6). A July 2006 CT scan revealed conditions of congenitally narrow spinal canal and spondylostenosis. (Tr. at 509). A November 2006 MRI of the lumbar spine revealed multilevel mild to moderate spinal stenosis, mild disc bulges at L3-4 and L4-5, developmental canal narrowing, mild facet

---

[2] The Court's discussion of medical records focuses on those records that are relevant to the issues raised in Plaintiff's Objections (Doc. 18).

2

and ligament hypertrophy, and a focal signal abnormality in the S1 region. (*Id.* at 497). In July 2007, a MRI showed degenerative changes involving the cervical spine and multi-level spinal stenosis. (*Id.* at 479).[3]

On October 3, 2007, Dr. Balturshot completed a "physical capacities evaluation" of Plaintiff and opined that she was unable to sit or walk for more than 15 to 20 minutes without moving. (*Id.* at 469). He made the following conclusions: Plaintiff could never lift up to 10 pounds, but could occasionally carry up to 10 pounds; Plaintiff could use her hands for simple grasping; she was unable to use her hands for pushing and pulling; she could occasionally reach above shoulder level, but was unable to bend, squat, crawl, or climb; Plaintiff had total restriction from activities involving unprotected heights, exposure to marked changes in temperature and humidity, and driving automobile equipment; and Plaintiff had mild restrictions on activities involving moving machinery and exposure to dust, fumes, and gases. (*Id.*).

In August 2008, Plaintiff began treatment with Dr. Rupal Oza. (*Id.* at 559). During Plaintiff's first visit with Dr. Oza, Plaintiff reported stable pain. A September 2008 MRI of Plaintiff's cervical spine revealed no significant changes since July 2007. (*Id.* at 513). In December 2008, Plaintiff reported that she was doing well and that her overall pain had been stable with the current pain medicine regimen. She also reported that she continued to exercise daily and had no new injuries or worsening pain. (*Id.* at 548). In both April 2009 and June 2009, Plaintiff reported back pain and difficulty completing some activities of daily living. (*Id.* at 587-588). During a June 30, 2009 visit with Dr. Oza, Plaintiff reported that her back pain had been stable and improved. Dr. Oza noted that Plaintiff's current medical regimen adequately controlled Plaintiff's back pain. (*Id.* at 584). At this same visit, Dr. Oza also noted that Plaintiff

---

[3] An extensive review of Dr. Balturshot's health treatment may be found in the Magistrate Judge's Evidence of Record. (*See* Doc. 17 at 3-5).

had been diagnosed with degenerative disk disease in her cervical lumbar spine. (*Id.* at 872). Dr. Oza also commented that Plaintiff had always been compliant with Plaintiff's treatment plan. (*Id.*). Dr. Oza opined that:

> [Plaintiff] is unable to sit or stand for greater than 15 minutes. She is unable to lift, carry, push or pull any amount of weight. She is able to walk approximately 200 feet before stopping but she does have significant pain with this. She has very limited bending and is unable to stoop or squat. I do not see her as being able to work at this time.

*Id.*

Dr. Oza continued to treat Plaintiff regularly through at least February 2013. Plaintiff had spinal surgery in August 2010 and was diagnosed with L4-5 lumbar stenosis with neurogenic claudication in July 2011. (*Id.* at 871). In a July 2011 letter, Dr. Oza also commented that Plaintiff was on chronic pain medication and opined that Plaintiff was unable to hold a full time work position. (*Id.*).

In February 2013, Dr. Oza completed a "physical capacities evaluation" of Plaintiff. (*Id.* at 409). The evaluation diagnosed Plaintiff with degenerative disk disease of the lumbar spine, cervical spinal stenosis, lumbosacral neuritis, failed back surgery syndrome, and fibromyalgia. (*Id.*). Dr. Oza opined the following: Plaintiff was unable to work an 8-hour day for a period of 12 months or more; in an 8-hour workday, Plaintiff could stand or walk for 60 minutes, for 20 minutes without interruption; Plaintiff could sit for 60 minutes in an 8-hour workday, for 10 minutes without interruption; Plaintiff could rarely handle; and Plaintiff could frequently lift or carry up to 5 pounds. (*Id.*).

## B. The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2010.[4]  He also found that Plaintiff had not engaged in substantial gainful activity following her alleged onset date.[5]  Finally, the ALJ determined that Plaintiff had the following severe impairments: disorders of the back, fibromyalgia, obesity, affective disorder, anxiety disorder, and borderline intellectual functioning.  (Doc. 10-2 at 26).  Despite these findings, the ALJ concluded that Plaintiff's impairments had not met the requirements of the Listing of Impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Thus, the ALJ determined that Plaintiff was not entitled to Social Security benefits.

In considering the medical opinion evidence of Dr Balturshot, the ALJ considered Dr. Balturshot's medical opinion that Plaintiff was "severely disabled and unable to do even sedentary work." (*Id.* at 33).  The ALJ, however, determined that Dr. Balturshot's opinion was not credible because her opinion was inconsistent with her own treatment records.  In reviewing the records, Dr. Balturshot did not indicate that Plaintiff had the functional limitations that were outlined in her medical opinion statement.  Specifically, Dr. Balturshot did not "tell [Plaintiff] to avoid certain types of activities or that she had significant medically imposed limitations." (*Id.* at 33).  The ALJ further opined:

> [T]reatment evidence showed that while [Plaintiff] had some ongoing impairments and limitations, there was no evidence that her providers stated that she had such extreme and profound functional limitations.  In addition, [Plaintiff] repeatedly reported that she could perform a full range of activities of daily living without significant assistance, as well as such activities as walking her dog and

---

[4] Insured status is the requirement for an individual to meet the requirements of sections 216(i) and 223 of the Social Security Act in determining a period of disability and disability insurance benefits.  Here, the ALJ determined that Plaintiff had acquired sufficient quarters of Social Security coverage through June 30, 2010.  (Doc. 10-2 at 24).

[5] "Substantial work activity" is work activity that involves performing significant physical or mental activities.  *See* 20 C.F.R. § 404.1472(a) and 416.972(a)).  "Gainful work activity" is work that is usually done for pay or profit.  *See* 20 C.F.R. § 404.1572(b) and 416.972(b).

>caring for her young grandson during the daytime hours. Finally, Dr. Balturshot's opinion did not contain more than a multitude of checkboxes. Her opinion statement did not indicate in any sense how she reached her conclusion regarding each determination or what evidence she relied. Overall, these factors led the undersigned to determine that Dr. Balturshot's opinion was not credible. These same factors led the undersigned to give Dr. Oza's opinion of June of 2009, little weight.

(*Id.* at 33).

In considering Dr. Oza's 2011 opinion, the ALJ found it to not be credible because Dr. Oza "merely stated what treatments [Plaintiff] was receiving and concluded that she could not work." Similar to Dr. Balturshot's 2007 opinion, the ALJ found that Dr. Oza did not provide "any specific functional findings or explanation for why he felt that she could not work." The ALJ determined that Dr. Oza's opinion did not "necessarily represent a medical opinion," but instead represented a mere indication that Plaintiff could not work. (*Id.* at 34). The ALJ commented that even if Dr. Oza's statements were treated as a medical opinion, Plaintiff's treatment record and reported abilities indicate that Dr. Oza's opinion was not credible, and was therefore entitled to little weight. (*Id.* at 34).

Moreover, the ALJ determined that Plaintiff had the residual functional capacity to perform sedentary work with certain limitations. (*Id.* at 28).[6] The ALJ held, therefore, that although Plaintiff could not perform her past relevant work, she could perform jobs identified by the vocational expert, and that such jobs existed in significant numbers in both the national and state economies. In sum, the ALJ concluded that Plaintiff was not entitled to benefits. (*Id.* at 38-39).

---

[6] Residual functional capacity is an individual's ability to perform physical and mental work activities on a sustained basis, notwithstanding limitations from impairments. *See* 20 C.F.R. § 404.1520(e).

6

## II. PROCEDURAL POSTURE

Plaintiff filed her Statement of Specific Errors (Doc. 11) on August 11, 2014. Defendant provided a Memorandum in Opposition (Doc. 16) on November 13, 2014. The Magistrate Judge issued a Report and Recommendation (Doc. 17) on December 17, 2014, and Plaintiff filed her Objections to the Magistrate Judge's Report and Recommendation (Doc. 18) on December 29, 2014. Defendant filed a Response to Plaintiff's Objections (Doc. 19) on January 12, 2015. The Magistrate Judge's Report and Recommendation is now ripe for review.

## III. STANDARD OF REVIEW

In reviewing the ALJ's decision, the Magistrate Judge's task is to determine if that decision is supported by "substantial evidence."[7] 42 U.S.C. § 405(g). This Court, upon objection, is required to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). A *de novo* review requires the Court to re-examine all the relevant evidence previously reviewed by the Magistrate Judge and to determine whether the findings of the [ALJ] are in fact supported by "substantial evidence." *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1053 (6th Cir. 1983); *Gibson v. Sec'y of Health, Educ. & Welfare*, 678 F.2d 653, 654 (6th Cir. 1982).

This Court's review "is limited to determining whether the [ALJ's] decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). Substantial evidence means such relevant evidence as a reasonable

---

[7] When the initial decision of the Commissioner of Social Security is appealed, the Administrative Law Judge will make a decision. If, on another level of appeal, the Appeals Council makes a decision, that decision becomes the final decision of the Commissioner. If the Appeals Council denies a request for appeal, the Administrative Law Judge's decision becomes the final decision of the Commissioner. Upon review at the Federal level, the court must review the Appeals Council or ALJ decision as if it were the decision of the Commissioner.

mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ellis v. Schweicker*, 739 F.2d 245, 248 (6th Cir. 1984). In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider the record as a whole. *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984); *Ellis*, 739 F.2d at 248; *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365 (6th Cir.1984); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981); *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978). The findings of the ALJ are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter, Comm'r of Soc. Sec.*, 246 F.3d 762 (6th Cir. 2001). If the ALJ's decision is supported by substantial evidence, it must be affirmed, even if the Court would have arrived at a different conclusion. *Elkins v. Sec'y of Health and Human Servs.*, 658 F.2d 437, 439 (6th Cir. 1981).

## IV.   ANALYSIS

Plaintiff objects to the ALJ's decision on two grounds, and included these grounds in her objection to the Magistrate's Report and Recommendation. (Doc. 18; *see* Doc. 11). Plaintiff's objections are addressed in turn below.[8]

### A. ALJ's Evaluation of and Weight Given to Treating Source Medical Opinions

Plaintiff first asserts that the ALJ failed to properly evaluate Dr. Balturshot and Dr. Oza's treating source medical opinions. (Doc. 11 at 5; Doc. 18 at 3). She claims that the ALJ failed to give adequate weight to Dr. Balturshot and Dr. Oza's opinions based on the requirements of 20

---

[8] Plaintiff's Objections (Doc. 18) "incorporate[] by reference the contentions raised in [Plaintiff's] statement of errors," but only specifically address the Magistrate Judge's conclusion that the ALJ afforded proper weight to Plaintiff's treating physicians. (*See* Doc. 18 at 2). This analysis also addresses the Magistrate Judge's review in context of the record.

C.F.R. §§ 404.1527(c) and 416.927(d). (Doc. 11 at 6).[9] This Court disagrees, and finds that the ALJ properly considered the credibility of the treating physicians' medical opinions.

When deciding if an individual is disabled under the Social Security Act, the Commissioner makes the ultimate determination. *Houston*, 736 F.2d at 367. In making this determination, the Commissioner may consider medical opinions presented by the applicant's treating or examining physicians, as well as the opinions of state-sanctioned physicians and medical experts. 20 C.F.R. § 404.1527 (2012); SSR 96-2P, 1996 WL 374188 (July 2, 1996). Traditionally, a treating physician's medical opinion is given more weight than a government-employed physician because a treating physician generally has better knowledge of the patient's history and impairments. *See* 20 C.F.R. § 404.1527(c)(1)-(2); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 854-55 (6th Cir. 1986); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). A treating physician is "[a patient's] own physician, psychologist, or other acceptable medical source who provides [the patient], or has provided [the patient], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the patient]." 20 C.F.R. § 404.1502. The Commissioner is not bound by the treating physician's opinion, however, if it is a mere conclusory statement or if it is not based on sufficient medical data. *See, e.g.*, 20 C.F.R. § 404.1529; *Duncan*, 801 F.2d at 854-55; *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

When weighing medical opinion evidence, the ALJ may discount the treating doctor's opinion. In doing so, however, the ALJ must provide "good reasons" for not providing treating source opinions with controlling weight. 20 C.F.R. § 404.1527(c)(2). *See also Rogers*, 486 F.3d at 242-43; *Blakley*, 581 F.3d at 408; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.

---

[9] Plaintiff's briefing incorrectly references 20 C.F.R. § 404.1527(d)(2), instead of 20 C.F.R. § 404.1527(c)(2) (2012).

9

2004).  The ALJ can achieve this by providing a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  If an ALJ does not accord controlling weight to a treating source opinion, the ALJ's analysis must apply certain factors—the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining the weight to give the opinion. 20 C.F.R. § 404.1527(c); *Wilson*, 378 F.3d at 544.  The "good reasons" requirement allows applicants to understand the outcome of their claim and also provides a basis for "meaningful appellate review." *Id.* at 544.  Failure to follow this process amounts to an absence of substantial evidence and requires reversal or remand to follow the appropriate steps. *Id.* at 545.

The ALJ need not address every piece of evidence or explicitly walk through the six factors set out in 20 C.F.R. § 404.1527(c).  *Prince v. Astrue*, No. 2:10-cv-00008, 2011 WL 1124989, at *8-9 (S.D. Ohio Jan. 11, 2011) *report and recommendation adopted*, No. 2:10-CV-00008, 2011 WL 1124986 (S.D. Ohio Mar. 25, 2011) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)).  Adequate explanations exist where the ALJ indicates the weight given to each treating source's medical opinion, gives a clear explanation as to why that weight is given, and explains why he adopts the other medical opinions of record.  *See, e.g.*, *Prince*, 2011 WL 1124989, at *6-9; *Duncan*, 801 F.2d at 854-55.  Where an ALJ simply discounts a treating physician's opinion for lack of objectivity and adopts government medical opinions based on objectivity, however, this type of bare assertion does not constitute "good reason." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)  (finding that an ALJ failed to

provide a legitimate basis for rejecting the opinions of treating source physicians and finding the assessments of consultative examiners to be more objective).  Instead, an ALJ should provide "specific and legitimate reasons" which are supported by substantial evidence in the record when rejecting the opinions of a treating physician.  *Id.*  Similarly, a "summary rejection" is insufficient.  *Blakley*, 581 F.3d at 408.

In the this case, Plaintiff insists that the ALJ and Magistrate Judge erred by not providing great, if not controlling weight to her treating doctors' opinions.  (Doc. 18 at 3).  Although Dr. Balturshot and Dr. Oza have a history of treating Plaintiff, the ALJ's decision that afforded little weight to Dr. Balturshot and Dr. Oza's medical opinions was supported by substantial evidence.

The ALJ indicated that Dr. Balturshot's opinion was given little weight because it was not credible.  According to the ALJ, Dr. Balturshot's opinion lacked credibility because Dr. Balturshot did not support her opinion with objective medical findings.  (*See* Doc. 10-2 at 33). The ALJ further determined that Plaintiff's medical records did not reflect the limitations included in Dr. Balturshot's medical opinion.  For example, Dr. Balturshot did not instruct Plaintiff to avoid certain activities or tell Plaintiff that she had significant medically imposed limitations.  (*Id.*).  In addition, the ALJ emphasized that Plaintiff was able to perform activities of daily living such as walking her dog and caring for her young grandson.  (*Id.*).  The ALJ also determined that Dr. Oza's 2009 and 2011 opinions were not credible because he did not include specific functional findings or an explanation for why he believed Plaintiff could not work.  (*Id.* at 34).

Moreover, the ALJ emphasized conflicting medical evidence of Plaintiff's residual functional capacity throughout his entire opinion, including an independent consultative examiner's findings, the state agency physician evaluations, Plaintiff's testimony, and the

medical record.  (*Id.* at 34-35, 37).  The ALJ further explained that the state agency physicians' opinions were considered and found to be consistent with objective medical evidence of record.  (Id. at 34-35).  Given the conflicting evidence, and in light of this Court's analysis of the entire record, the ALJ was justified in his finding.  Although this Court, as a matter of first impression, might not agree, it cannot hold that the ALJ's finding is not supported by "substantial evidence."

The ALJ's findings are more than bare assertions or summary rejections.  Indeed, the ALJ properly considered Dr. Balturshot and Dr. Oza's opinions and rejected them because their findings conflicted with the other significant evidence in the record.  The ALJ further explained that Plaintiff's testimonial evidence was partially credible because Plaintiff alleged impairments and limitations beyond those identified in the residual functional capacity statement.  Similarly, the ALJ found that Plaintiff's allegations of severe and profound functional limitation were unsupported because Plaintiff regularly reported to her doctors that she was able to perform activities of daily living with minimal assistance.  (*Id.* at 35-37).  The ALJ also indicated why he adopted the state agency medical opinions, and thus has set out "good reasons" and sufficient evidence under 20 C.F.R. § 404.1527.  *See id.*

Even if this Court assumes, arguendo, that the ALJ failed to give proper weight to Dr. Balturshot and Dr. Oza's treating source medical opinions, reversible error would not result.  First, when weighing medical opinion evidence, the ALJ is allowed to discount the medical opinions of treating sources if the ALJ provides "good reasons."  See 20 C.F.R. § 404.1527(c)(2); *Rogers*, 486 F.3d at 242-43; *Blakley*, 581 F.3d at 408; *Wilson*, 378 F.3d at 541.  Here, the ALJ provided a detailed analysis of the facts and conflicting medical opinion evidence in his findings.  The ALJ also provided an explanation for why he gave little weight to Dr. Balturshot and Dr. Oza's medical opinions and adopted the state agency medical opinions.

Second, the ALJ's opinion includes substantial evidence supporting the discounting of Dr. Balturshot and Dr. Oza's medical opinions.  Thus, it was not reversible error for the ALJ to give little weight to Dr. Balturshot and Dr. Oza's medical opinions.

### B.  The Magistrate Judge's Context of the Record

Plaintiff asserts that the Magistrate Judge selectively used out-of-context statements from the record to support the Magistrate Judge's opinion.  (Doc. 18 at 4).  According to Plaintiff, the Magistrate Judge provided out-of-context statements regarding Plaintiff's ability to perform a full range of activities of daily living.  (*Id.*).  Plaintiff's claim is without merit.

Plaintiff takes issue with the Magistrate Judge's citation to statements in Plaintiff's medical records that indicate Plaintiff's ability to perform a range of daily living activities "without significant assistance."  (Doc. 17 at 17; *See* Doc. 18 at 4).  This Court has examined and fully reviewed Plaintiff's medical records in the context of Plaintiff's ability to perform daily activities, and has found that the Magistrate Judge used these statements in context.  (*See* Doc. 18 at 4).  Even if the Magistrate Judge's statements were taken out-of-context, the ALJ and Magistrate Judge afforded proper weight to Plaintiff's treating physicians.  For these reasons, Plaintiff's objections must be overruled.

### V.  CONCLUSION

For the reasons listed here and in the Magistrate Judge's Report and Recommendation, Plaintiff's Objections are hereby **OVERRULED**.  The Court adopts the Magistrate Judge's **Report and Recommendation**.  The case is **DISMISSED**.

**IT IS SO ORDERED.**

     /s/ Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  June 30, 2015**